PEACHIE SWIGAR

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Springfield March 26, 1884.*

1. CRIMINAL LAW—*sufficiency of evidence to sustain conviction for manslaughter.* In this case the defendant was tried upon an indictment for the alleged murder of his wife, the trial resulting in a verdict for manslaughter. Upon a review of the evidence it was considered sufficient to warrant the conviction.

2. PRACTICE—*time to object to improper evidence.* If no objection is made to the admission of testimony on the trial of one for crime, which is alleged to be improper, it can not be urged as error by the defendant on writ of error. The objection can not be considered in this court when made here for the first time.

3. INSTRUCTIONS—*singling out parts of the facts proved.* Instructions asked in a criminal case are properly refused if they direct the attention of the jury to a partial view of the evidence, and direct an acquittal if they believe the facts stated to be true. Much less is there error in refusing such instructions if all that is proper in them is given in others.

4. ERROR *will not always reverse—inaccuracy in instruction.* A judgment of conviction in a criminal prosecution will not be reversed for a slight inaccuracy in the wording of an instruction for the People, which could have done the accused no possible harm.

WRIT OF ERROR to the Circuit Court of Edgar county; the Hon. J. W. WILKIN, Judge, presiding.

Mr. ROBERT L. MCKINLAY, and Mr. HENRY S. TANNER, for the plaintiff in error.

Mr. JAMES MCCARTNEY, Attorney General, Mr. J. W. SHEPERD, State's Attorney, and Messrs. SELLAR & DOLE, for the People.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

At the March term, 1883, of the Edgar county circuit court, Peachie Swigar was indicted for the murder of Hannah Swigar. The cause was continued to the September term of court next thereafter, when the cause was tried, and the jury found defendant guilty of manslaughter, and fixed the term of punishment at twenty years in the penitentiary. Motions for a new trial and in arrest of judgment were severally overruled, and the court pronounced judgment on the verdict. To reverse that judgment, defendant brings the case to this court on error.

The evidence contained in the record has been subjected to a most careful study, and every point made by counsel for a reversal of the judgment has been fully considered, and no error is discovered in the entire record that is at all prejudicial to the defence sought to be made. Counsel seem to lay great stress on the fact the "evidence was entirely circumstantial." That is true so far as the testimony is concerned to connect defendant with the crime, but there is some direct evidence as to the cause of death. It is proven, past all reasonable doubt, the death of Hannah Swigar was caused by actual violence, inflicted by some one. There is evidence of violence by which the jaw of deceased was dislocated. All the medical witnesses that examined the body with a view to ascertain the cause of death, agree the wound on the jaw, which was a severe one, was "*ante mortem*," and that it must have been inflicted with some degree of violence. It might have been done, in their opinion, with the fist of a man, or with any blunt instrument. Other marks of violence were

18—109 ILL.

found on the face of the deceased, all of which, with one exception, were evidently made before death. The expert witnesses all agree death was caused by asphyxia or strangulation, but whether death ensued before or after she was placed in the little stream where the body was found, they are not agreed, but that is not a matter of much consequence. One of the surgeons that testified on behalf of defendant, gave it as his opinion deceased "came to her death by violence," and of that fact there can not be the slightest doubt, when the evidence is all considered. The theory death was the result of accident, from a fainting fit, or otherwise, has absolutely no support in the testimony. The surgeons that conducted the *post mortem* examination, all say her brain, heart and lungs were in a healthy condition. There is no evidence that she had ever been subject to any sudden illness. She was a young woman, not much, if any, past seventeen years, and so far as the record discloses, had always been healthy. She had just left her mother's house, with no apparent sickness, and it is wholly improbable she was overtaken with any sudden illness in so brief a time as elapsed before her death. The position of the body when found in the water renders it improbable that death was the result of accident or sudden sickness. When the body was found, she was lying on her face, with her hands under her body, her person straightened out, and her clothing all in order. It must have required care to have placed the body in that position. It is extremely improbable the body, with the clothing so carefully arranged, came to that position by mere accident. There were tracks of some person near where the body was found, and the conclusion is irresistible her death was caused by violence, and that the body was placed in the water by some one either before or after death ensued.

The inculpatory evidence tending to connect defendant with the commission of the crime alleged against him, is entirely circumstantial. But it must be conceded the facts and cir-

cumstances proven were sufficient to make the question of the guilt or innocence of defendant one to be left to the determination of the jury. Every fact in the record points to defendant as the guilty party. That some one killed his wife admits of no doubt, and there is not the slightest fact or circumstance proven that tends, in the remotest degree, to implicate any one other than defendant. It will not be necessary to enter upon any critical analysis of the evidence. It has been carefully considered, and it is seen it is sufficient to warrant the conviction. To some extent it shows opportunity and motive. His own testimony at the inquest, in the presence of the body, is to the effect he was at or near the place where the body was found at about the time she would reach there after leaving her mother's house to go to her own house. Explanations given of his conduct as he passed the place where the body was afterwards found, are very unsatisfactory. Indeed, his whole conduct after his wife was discovered to be missing was mysterious in the extreme, and was highly calculated to excite suspicion. As respects motive, it seems he found fault with his wife on account of a letter he imagined she had received from a friend that had been recently visiting at her father's house, and would not show to him. The evidence shows she had received no such letter. In conversation with a young brother of deceased, on the day of her death, defendant inquired of him whether his wife had gone to a funeral that was being held in the immediate neighborhood, with certain persons whom he named, and said, if she had done so "she would never go to another one." In the midst of the search, when the neighbors had gathered to assist,—an hour, it would seem, of extreme solicitude and anxiety to all engaged,—the only explanation he ventured to give for her disappearance was her infidelity to him. He assumed to discover tracks, that no one else could see, that indicated, as he said, her elopement with a paramour. It ought to be said there existed, neither in the testimony nor

in fact, any ground for the imputation of wrongful conduct to the deceased. But the jury may have humanely believed that defendant, while entertaining the belief his wife had gone to the funeral with persons objectionable to him for some reason, had met her on her way home, and in an altercation struck her with his fist, or with the piece of bark that was found by her, that produced the severe wound on the jaw, and then strangled her, causing death,—otherwise their verdict would certainly have been for a graver offence than manslaughter.

It is insisted improper evidence was permitted to go to the jury, that was prejudicial to defendant. It is sufficient to say, no objection was taken at the trial to the admission of the evidence it is now said was improper, and the objection can not be considered for the first time in this court.

The point is made the trial court erred in refusing to give defendant's seventh and eighth of the series of refused instructions. Both instructions are faulty, because they direct the attention of the jury to a partial view of the evidence, and direct an acquittal if they believe the facts, as stated, to be true. But aside from this view, all that is contained in either instruction that was proper to be given was contained in other instructions that were given for defendant. The jury were very fully instructed on every phase of the defence he was seeking to make, and there is no ground for complaint on that score. There may be some slight grounds for the criticism made on the tenth of the series of instructions given for the People, but the inaccuracy complained of, if it exists, is so very slight it could do no possible harm to the cause of defendant. At most, that which is made the ground of complaint is the phraseology in which the principle of the instruction is stated, and that is too slight an error upon which to base a reversal of the judgment.

No error appearing in the record at all prejudicial to defendant, the judgment must be affirmed.

*Judgment affirmed.*